<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALEXANDRA SHAW, | : | |
| Plaintiff, | : | Civ. No. 03-5895 (GEB) |
| v. | : | **OPINION** |
| FEMENELLA & ASSOCIATES, et al., | : | |
| Defendants. | : | |

<u>**BROWN, District Judge**</u>

  This personal injury action arises from injuries that Plaintiff allegedly sustained after falling through an opening while in the north tower of the Princeton University Chapel. Plaintiff seeks monetary relief for her alleged injuries from the defendants the Trustees of Princeton University ("Princeton"), Masonry Preservation Group ("MPG") and Femenella & Associates ("Femenella") (collectively "Defendants"). Defendants have separately moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and for summary judgment against Plaintiff's claims and their co-defendants' cross-claims pursuant to Federal Rules of Civil Procedure Rule 56.

**I.  BACKGROUND**

  The undisputed facts are as follows. On or about December 13, 2001, between 8:30 and 9:00 p.m., Plaintiff and her friend, Ms. Ann Kelly, entered the Princeton University Chapel ("Chapel"). Princeton's 8/12/05 Br. Ex. B (Shaw 1/19/05 Dep.) at 41. Both Plaintiff and Ms. Kelly were Princeton students at the time. Princeton's 8/12/05 Br. Ex. E (Princeton Univ. Dep't of Public Safety Case Report (12/13/01)). Their asserted purpose in visiting the Chapel was to reach the cupola area of the north tower ("Tower") to observe the view from that location. Shaw

1

1/19/05 Dep. at 16, 43.  Plaintiff had witnessed the view from that area on at least one prior occasion, in November 2001, with Mr. Sam Roche, an architecture student at Princeton.  *Id.* at 13-17.  In addition to her earlier visit, Plaintiff had also been exposed to the Chapel in the course of two architecture classes that she had taken while at Princeton.  *Id.* at 45-46.  According to Plaintiff, she wanted to show Ms. Kelly the view from the Tower because, among other reasons, Plaintiff wanted to share "something beautiful" with her friend.  *Id.* at 43-44.

To reach the cupola area of the Tower, Plaintiff and Ms. Kelly climbed a tightly twisting set of stairs that led to a balcony.  Shaw 1/19/05 Dep at 20-21, 50; Princeton's 8/12/05 Br. Ex. G (Princeton Univ. Envtl. Health and Safety Report (12/26/01)).  They then walked across the balcony and through a wooden door to access the attic area of the Chapel.  Shaw 1/19/05 Dep at 24, 56; Princeton Univ. Envtl. Health and Safety Report (12/26/01).  Upon entering the attic area, they walked along a suspended catwalk, then entered the cupola area of the Tower.  *Id.* at 29-30, 57-59; Princeton Univ. Envtl. Health and Safety Report (12/26/01).

On the night of Plaintiff and Ms. Kelly's visit to the Chapel, the Tower was not open to the public.  Princeton's 8/12/05 Br. Ex. F (Princeton Univ. Dep't of Public Safety Supplement Report (12/14/01)).  Despite this fact, Plaintiff thought that she and Ms. Kelly were permitted to enter the Tower because she believed that as Princeton students, they were entitled to enter the area as long as the doors were not locked and not marked as private.  Shaw 1/19/05 Dep. at 44-45, 52.  From the entrance of the Chapel to the cupola area of the Tower, Plaintiff and Ms. Kelly had to pass through approximately six doors, each of which was unlocked and unmarked on the night they visited the Chapel.  Princeton Univ. Envtl. Health and Safety Report (12/26/01).  While MPG alleges that one of the doors physically could not be locked, there remain approximately five additional doors that undisputedly could have been locked.  There were also no prohibitions or barriers impeding Plaintiff and Ms. Kelly's access to the cupola area of the Tower on the night of their visit.  Shaw 1/19/05 Dep. at 44.  According to Plaintiff, however, even if there had been a rope across the stairs that led to the attic area of the Chapel, she might

2

nonetheless have gone beyond the rope and up the stairs. *Id.* at 52.  The Princeton University Chapel Nightwatch Handbook states that "no one is permitted in the balconies, towers or on the roof."  Princeton's 8/12/05 Br. Ex. P (Princeton University Chapel Nightwatch Handbook).

The path that Plaintiff and Ms. Kelly took was well-lit until they reached the cupola area of the Tower.  Princeton Univ. Envtl. Health and Safety Report (12/26/01).  Plaintiff and Ms. Kelly found the cupola area to be completely dark.  Princeton Univ. Dep't of Public Safety Case Report (12/13/01).  Plaintiff did not turn on any lights, however, because she did not know where the light switch was located.  Shaw 1/19/05 Dep. at 60.  Despite the darkness, Plaintiff and Ms. Kelly continued their way into the cupola area.

The cupola area of the Tower consists of a small circular room with a metal grate as a floor.  Police Report (12/13/01).  The grate has a rectangular opening that permits access to a lower-level grate.  *Id.*  Upon entering the cupola area of the Tower on or about the night of December 13, 2001, Plaintiff fell through this opening, resulting in the alleged injuries that form the basis of her present lawsuit.  *Id.*  Plaintiff claims that she does not remember seeing the opening in the grate flooring during her November 2001 visit.  Shaw 1/19/05 Dep. at 31-32.

Paramedics who arrived at the scene of the accident detected a strong odor of alcohol on Plaintiff's breath.  Princeton Univ. Dep't of Public Safety Case Report (12/13/2001).  Plaintiff and Ms. Kelly had consumed several alcoholic beverages during dinner earlier in the evening.  Police Report (12/13/01).

Prior to the accident, on or about February 28, 2000, Princeton and MPG had entered into a contract whereby MPG would renovate certain exterior areas of the Chapel.  Princeton's 8/12/05 Br. Ex. H (2/28/00 Agreement).  On or about February 23, 2000, MPG had entered into a subcontract with Femenella, whereby Femenella would restore certain windows in the Tower as part of MPG's renovation work.  Femenella's 9/9/05 Br. Ex. AA (2/23/00 Agreement).  Femenella completed its work on the Tower windows in November 2001, before the date of Plaintiff's accident.  MPG's 8/24/05 Br. Ex. A (Howell 7/22/05 Dep.) at 40.  The parties dispute

whether MPG's work was completed prior to the date of the accident.

To facilitate the renovation work, Princeton gave keys to MPG that allowed it access to certain areas of the Chapel. Howell 7/22/05 Dep. at 74-75. It is undisputed that during the course of its work, MPG had access to the Chapel, and that it was not the only one with such access. *Id.* at 109-110. Indeed, at the time of the accident, members of Princeton's choir were rehearsing in the Chapel and the ground level entrances to the Chapel had been left unlocked. Princeton Univ. Envtl. Health and Safety Report (12/26/01). But the parties dispute whether MPG was given keys to the doors leading to the interior areas of the Tower, including the cupola area where Plaintiff's accident occurred, and whether the keys included those to the Chapel's exterior doors. The parties also dispute whether any other personnel had keys to the interior doors leading to the cupola area of the Tower. MPG returned the keys that it was given by Princeton on or about January 2, 2002, or approximately two weeks after the date of the accident. Princeton's 8/12/05 Br. Ex. R (Kelly 11/30/04 Dep.) at 78.

## II.     DISCUSSION

### A.     Defendants' Motions to Dismiss the Complaint

In considering a Rule 12(b)(6) motion to dismiss, this Court "must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff." *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935 (1985). The Court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Plaintiff alleges a claim of negligence against each of the Defendants. To prevail on a negligence claim under New Jersey law, a plaintiff must establish the following elements: (1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages. *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987).

Plaintiff's allegations are sufficient to survive Defendants' motions to dismiss. She

alleges that "[o]n or about December 12, 2001 Plaintiff . . . was a student at Princeton University and was lawfully on the premises known as The Chapel at Princeton University . . . ." Am. Compl. ¶6. She further alleges that "[a]t the time and place [of the accident], the Defendant, Masonry Preservation Group . . . was the general contractor for renovations being performed at The Chapel at Princeton University," and that "the Defendant, Femenella & Associates was the sub-contractor for renovations being performed at The Chapel . . . ." *Id.* ¶¶7-8. According to the Complaint, each of the Defendants had joint control over the site of the accident. *Id.* ¶¶7-9. Plaintiff alleges that as a result of Defendants' negligence, she "was caused to fall from the North Tower of The Chapel . . . ." *Id.* ¶11. Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff sufficiently states a claim against each of the Defendants. Defendants' motions to dismiss are therefore denied.

### B. Defendants' Motions for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Each of the Defendants has moved for summary judgment against both Plaintiff's claims and their co-defendants' cross-claims. The Court will consider the motions with respect to each claim and cross-claim in turn.

1. **Princeton's Motion for Summary Judgment Against Plaintiff's Negligence Claim**

Princeton argues that it is immune from Plaintiff's negligence claim based on the New Jersey Charitable Immunity Act ("Act"). Section 2A:53A-7(a) of the Act provides that:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.

N.J. Stat. Ann. § 2A:53A-7(a). To qualify for immunity under this provision, an entity must demonstrate that it: "(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." *O'Connell v. State*, 171 N.J. 484, 489 (2002) (internal quotations omitted).

It is undisputed that Princeton is a non-profit corporation organized exclusively for educational purposes. Princeton's charter states that its purposes include "the conduct of a university not for profit" and "the promotion, advancement, evaluation, and dissemination of learning . . . ." Princeton's 8/31/05 Reply Br. Ex. B (The Trustees of Princeton Univ. Charter (1963)). *See also Lax v. Princeton Univ.*, 343 N.J. Super. 568, 573 (App. Div. 2001) (holding that "[Princeton] University, which is itself devoted to educational purposes, is entitled to immunity from a claim arising out of the rental of an auditorium to another non-profit entity that uses the facility for similar educational purposes").

To demonstrate that it is entitled to immunity, Princeton must further prove that Plaintiff was a beneficiary under the Act. In determining whether a claimant qualifies as a beneficiary, the Court must determine: (1) whether the institution seeking immunity was engaged in the

performance of its charitable objectives at the time of the alleged injury; and (2) whether the injured plaintiff was a direct recipient of those good works. *Ryan v. Holy Trinity Evangelical Lutheran Church*, 175 N.J. 333, 350 (2003). In interpreting the provisions of the Act, section 2A:53A-10 provides that:

> This act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes.

Under New Jersey law, courts "afford[] to nonprofit institutions, whether educational, religious or charitable, substantial latitude in determining the appropriate avenues for achieving their objectives." *Bloom v. Seton Hall Univ.*, 307 N.J. Super. 487, 491 (App. Div. 1998). Courts "have broadly interpreted the term 'educational' when construing [the Act], and have not limited the word to scholastic activities." *Rupp v. Brookdale Baptist Church*, 242 N.J. Super. 457, 465 (App. Div. 1990) (holding that a camp's recreational activities were "educational" for purposes of the Act). For universities, immunity extends beyond the activities in the classroom, and "[their] objectives may reasonably include operation of a quasi-commercial entity such as a cafeteria or a bookstore for the benefit of students, without losing [immunity] status." *Bloom*, 307 N.J. Super. at 491 (holding that a university's operation of an on-campus pub was in performance of its charitable objectives).

      Here, the question is whether Princeton's ownership, operation and maintenance of the Chapel constitute activities in pursuit of its educational objectives. In addition to its other university roles, the present action reveals that the Chapel is the subject of study in architecture classes at Princeton, and served as a rehearsal space for the school's choir at the time of the accident. It is clear that Princeton used the Chapel in pursuit of its educational objectives.

      Princeton must further demonstrate that Plaintiff was a beneficiary of the university at the time of her alleged injury. New Jersey courts have liberally granted immunity status to universities that were sued by their students. In *Graber v. Richard Stockton College of New*

7

*Jersey*, 313 N.J. Super. 476 (App. Div. 1998), the plaintiff was a student who was injured when she fainted after participating in a physiology lab at the university she attended. The plaintiff sued the university, and the university moved for summary judgment based on its claim of immunity pursuant to the Act. *Id.* at 479-80. The trial court granted the university's motion, which judgment the plaintiff appealed. *Id.* at 480.

The plaintiff argued that "merely being a student of [the university] did not necessarily make her a beneficiary and [that] '[t]here is no case law that labels a student of a university or a college an automatic beneficiary to that institution.'" *Id.* at 484. The court disagreed, citing its decision in *Bloom*, 307 N.J. Super. 487. According to the Appellate Division, "[f]undamental though unexpressed in our reasoning in *Bloom* was the conclusion that a student engaging in educational pursuits is *per se* a beneficiary of a college or a university." *Graber*, 313 N.J. at 484. The court observed that, "[i]ndeed, we stated in *Bloom* that for purposes of the Charitable Immunity Statute, Bloom was 'no less a student' when patronizing the pub or buying a sandwich at the university run commons, 'and no less a beneficiary of its works.'" *Id.* (quoting *Bloom*, 307 N.J. Super. at 492).

At the time of her alleged injury, Plaintiff was a senior at Princeton and lived on campus. The Chapel is located on campus and used for a variety of educational and related recreational purposes, including as a subject of study in architecture courses. Plaintiff had been exposed to the architecture of the Chapel during the course of her studies at Princeton. Plaintiff was shown the view from the Tower of the Chapel in November 2001 by a Princeton student who was enrolled in the architecture program. She admits that she felt entitled to enter the Tower, which was closed to the public on the night of her accident, because she was a Princeton student. Plaintiff was clearly acting as a beneficiary while in the Chapel on the night of her accident.

In light of these established facts and the immunity granted by the Act, Princeton's motion for summary judgment against Plaintiff's negligence claim is granted.

## 2. Princeton's Motion for Summary Judgment Against MPG and Femenella's Cross-Claims for Indemnification

Princeton also seeks summary judgment against the cross-claims for indemnification brought against it by co-defendants MPG and Femenella. "It is well established that indemnification claims may arise under two circumstances in New Jersey. The claim must rest either upon an express contract or an implied obligation imposed by law in view of the relationship of the parties." *Dickinson v. Magargal*, 1993 U.S. Dist. LEXIS 13789, at *8 (D.N.J. Sept. 28, 1993) (internal quotations omitted).

Femenella's cross-claim for indemnification against Princeton is not based on express contract because its contract was with MPG, not Princeton. While MPG, in contrast, did have an express contract with Princeton, it also may not recover on its indemnification cross-claim based on an express contract theory. The contract between Princeton and MPG provides that:

> To the fullest extent permitted by law, Contractor [MPG] shall indemnify and defend . . . Princeton University, its trustees, officers, employees and agents . . . from and against all claims, damages, losses and expenses arising out of (i) the performance or nonperformance of the Work by the Contractor, any Subcontractor, or anyone for whose acts they are liable, or (ii) the Contractor's performance or nonperformance of its obligations under the Contract, provided the claims . . . do not result from the sole negligence of . . . [the University] . . . .

Princeton's 8/12/05 Br. Ex. H (2/28/00 Agreement, clause G2(a)). Under these terms, MPG is obligated under certain circumstances to indemnify Princeton for damages sustained in the course of MPG's employment. It does not provide that Princeton must indemnify MPG for such damages. Nor does MPG point to any other provision in the contract providing for such indemnification by Princeton. The Court must consider instead whether MPG and Femenella's cross-claims for indemnification may be based on an implied obligation.

Generally, to be entitled to indemnification based on an implied obligation, "a party must be without fault." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986). "The right to indemnity is granted only to those whose liability is secondary and not primary, *i.e.*, whose negligence is not morally culpable, but, rather, merely constructive, technical, imputed or

vicarious." *Young & Rubicam, Inc. v. Palm Marketing, Inc.*, 1988 WL 34046, at *3 (D.N.J. April 12, 1988) (citations omitted).

Here, Plaintiff's negligence claims against MPG and Femenella are based on their alleged negligence in maintaining the cupola area of the Tower during the renovation work that they were performing in that area. Their liability, if any, would be based on their own respective actions or omissions, so that there would be no implied obligation of indemnity against Princeton. Princeton's motion for summary judgment against MPG and Femenella's cross-claims for indemnification is therefore granted.

        **3.**    **Princeton's Motion for Summary Judgment Against MPG and Femenella's Cross-Claims for Contribution**

Princeton also seeks summary judgment against MPG and Femenella's cross-claims for contribution. Contribution "is the right of one tortfeasor to recover from another tortfeasor when both are liable to a victim and one has paid more than his or her equitable share of the common liability." *In re Cendant Corp. Sec. Litig.*, 139 F. Supp. 2d 585, 594 (D.N.J. 2001) (citing Restatement (Second) Torts § 886A (1979)). In this case, Princeton is not liable to Plaintiff because of the immunity granted by the Act, so that its co-defendants may not recover on their cross-claims for contribution against Princeton. Princeton's motion for summary judgment with respect to MPG and Femenella's cross-claims for contribution is therefore granted.

        **4.**    **MPG's Motion for Summary Judgment Against Plaintiff's Negligence Claim and Femenella's Cross-Claims**

MPG argues that it is entitled to summary judgment with respect to Plaintiff's negligence claim and Femenella's cross-claims for indemnification and contribution. To succeed on its motion, MPG must demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

To prevail on her negligence claim against MPG, Plaintiff must prove the following

elements: (1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages. *Weinberg*, 106 N.J. at 484. "The test of negligence is whether the reasonably prudent person at the time and place should recognize and foresee an unusual risk or likelihood of harm or danger to others." *Scully v. Fitzgerald*, 179 N.J. 114, 125-26 (2004) (internal quotations omitted).

Here, there is genuine dispute of material facts concerning whether MPG owed Plaintiff a duty of care and whether it breached any such duty. Based on the established facts, several important factual questions remain unanswered, including: (1) whether the cupola area of the Tower where Plaintiff fell was within the scope of MPG's contract with Princeton; (2) whether MPG was given keys to the interior doors of the Chapel that lead to the cupola area of the Tower; (3) whether its responsibilities with respect to that area, if any, included locking the interior doors of the Chapel that lead to the cupola area of the Tower; (4) whether personnel other than MPG had keys to the interior doors of the Chapel that lead to that area; (5) whether MPG completed its work in the Chapel prior to the date of Plaintiff's accident; (6) if it did complete its work prior to the date of Plaintiff's accident, whether Princeton knew of that fact; (7) what responsibilities MPG had, if any, with respect to safely maintaining the cupola area of the Tower, either during or at the completion of its work; and (8) whether it fulfilled any such responsibilities.

In light of these disputed facts, the Court finds that MPG is not entitled to summary judgment with respect to Plaintiff's negligence claim. For these same reasons, MPG's degree of fault currently remains unclear, so that it is not entitled to summary judgment with respect to Femenella's cross-claims for indemnification and contribution.

       **5.**      **Femenella's Motion for Summary Judgment Against Plaintiff's Negligence Claim and MPG's Cross-Claims**

Femenella argues that it is entitled to summary judgment with respect to Plaintiff's negligence claim and MPG's cross-claims for indemnification and contribution. Although the established facts show that Femenella completed renovation of the Tower windows prior to the date of the accident, several material facts remain disputed, including: (1) whether the cupola

11

area of the Tower where Plaintiff fell was within the scope of Femenella's sub-contract with MPG; (2) what responsibilities Femenella had, if any, with respect to safely maintaining the cupola area of the Tower, either during or at the completion of its work; and (3) whether it fulfilled any such responsibilities.

In light of these disputed facts, the Court finds that Femenella is not entitled to summary judgment with respect to Plaintiff's negligence claim. For these same reasons, Femenella's degree of fault currently remains unclear, so that it is not entitled to summary judgment with respect to MPG's cross-claims for indemnification and contribution.

### 6. MPG and Femenella's Motions for Summary Judgment Against Princeton's Cross-Claims

Princeton's cross-claims against MPG and Femenella are based on its potential liability to Plaintiff for her alleged injuries. In light of the Court's grant of Princeton's motion for summary judgment with respect to Plaintiff's claim, Princeton is no longer entitled to recover on its cross-claims against MPG and Femenella. Accordingly, MPG and Femenella's motions for summary judgment with respect to Princeton's cross-claims are granted.

## III. CONCLUSION

For the foregoing reasons: (1) each Defendant's motion to dismiss is DENIED; (2) Princeton's motion for summary judgment with respect to Plaintiff's negligence claim is GRANTED; (3) Princeton's motion for summary judgment with respect to MPG and Femenella's cross-claims is GRANTED; (4) MPG's motion for summary judgment with respect to Plaintiff's claim and Femenella's cross-claims is DENIED; (5) MPG's motion for summary judgment with respect to Princeton's cross-claims is GRANTED; (6) Femenella's motion for summary judgment with respect to Plaintiff's claim and MPG's cross-claims is DENIED; and (7) Femenella's motion for summary judgment with respect to Princeton's cross-claims is GRANTED.

Dated:  December 7, 2005

                                                           s/ Garrett E. Brown, Jr.
                                                           GARRETT E. BROWN, JR., U.S.D.J.